IN RE:  MEDICAL REVIEW        *        NO. 2024-C-0795
PANEL PROCEEDINGS OF
TRAVIS PORCHE (D); PCF       *
FILE NO. 2021-00615           COURT OF APPEAL

                            *

                               FOURTH CIRCUIT

                            *

                               STATE OF LOUISIANA

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-02412, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Sandra Cabrina Jenkins**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Karen K. Herman)

**DYSART, J., CONCURS IN THE RESULT;
HERMAN, J., CONCURS IN THE RESULT**


      Guice A. Giambrone, III
      A. Rebecca Wilmore
      3421 N. Causeway Boulevard, Suite 900
      Metairie, LA  70002

          COUNSEL FOR RELATOR/DEFENDANT

      David A. Abramson
      Beth E. Abramson
      LEWIS, KULLMAN, STERBCOW & ABRAMSON, LLC
      601 Poydras Street, Suite 2615
      New Orleans, LA  70130

          COUNSEL FOR RESPONDENT/PLAINTIFF


               **JUDGMENT AMENDED; WRIT
               DENIED AS AMENDED**
                          **June 2, 2025**

This writ application arises from a medical malpractice action filed by Plaintiff, Pamela Porche ("Ms. Porche"), against Relator—Dr. Eric Brooks—and other defendants, Nurse Practitioner Sydney Burchfield ("NP Burchfield") and Ochsner Leonard J. Chabert Medical Center ("LJCMC"), arising out of the death of Ms. Porche's thirty-five year-old son, Travis Porche ("Travis"). Dr. Brooks seeks supervisory writ review of the district court's November 13, 2024 judgment which ordered Dr. Brooks to produce "privilege log" communications submitted exclusively to the district court. For the reasons that follow, we amend the judgment and deny the writ application as amended.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Porche transported Travis to LJCMC's emergency room on January 18, 2021, "for back pain radiating down his legs causing lower leg weakness, and a third recheck of his lungs due to previous pneumonia." Ms. Porche represents that NP Burchfield cared for Travis under the supervision of her husband, Dr. Brooks. Travis allegedly became agitated and wanted to leave because of improper treatment. Rather than allowing her son to leave, Ms. Porche claims that NP Burchfield and/or Dr. Brooks ordered that Travis be restrained and sedated. Multiple security guards and staff members restrained Travis. Ms. Porche believes the medications administered to Travis caused cardiac arrest which triggered anoxic brain injury, and ultimately, resulted in his death.

1

Ms. Porche filed a Request for Medical Review Panel on August 9, 2021, contending that Dr. Brooks, NP Burchfield, and LJCMC deviated from the standard of care in their treatment and care of Travis. To facilitate discovery, Ms. Porche filed a Petition to Institute Discovery, which was lodged in the district court on March 21, 2022.

Prior to the present matter, this Court reviewed a related discovery dispute pertinent to the issues raised herein in *In re Porche*, 2022-0707 (La. App. 4 Cir. 12/8/22), 353 So.3d 382 ("*Porche I*"). The relevant facts summarized in *Porche I*, provided the following:

> On April 4, 2022, [Plaintiff] filed a Request for Subpoena Duces Tecum ("SDT") and Notice of Deposition for Records Only for SLMA [South Louisiana Medical Associates], then the current or immediately former employer of Dr. Brooks and Ms. Burchfield. The SDT and Notice of Deposition for Records Only requested production of documents pertaining to the internal investigation or review of Ms. Burchfield and Dr. Brooks as it pertains to Travis Porche and his treatment; written or recorded statements obtained with respect to the treatment provided by Dr. Brooks and Ms. Burchfield to Travis Porche; disciplinary records, complaints, and internal reviews associated with Dr. Brooks and Ms. Burchfield; and the entire personnel file of Dr. Brooks and Ms. Burchfield.

> On April 27, 2022, Dr. Brooks and Ms. Burchfield filed a Motion for Protective Order, or In the Alternative, an Order Limiting the Scope of Discovery, arguing that the scope of the request was overly broad and intrusive as to privacy interests because the matter is in the medical review panel stage and because personnel files are primarily used for impeachment purposes. Further, they argued the records sought by [Plaintiff] are subject to the peer review privilege set forth in La. R.S. 13:3715.3[] and not subject to disclosure. SLMA filed a similar Motion on April 29, 2022.

> [Plaintiff] filed an opposition to [the] Motions on September 8, 2022. [Plaintiff] complained that [Dr. Brooks, Ms. Burchfield and SLMA] have not identified any documents sought to be produced, which they believe are subject to any privilege, and instead have argued a blanket privilege without identifying specifically those documents to which any privilege attaches. Consequently, [Plaintiff] maintained that [Dr. Brooks, Ms. Burchfield and SLMA] should be compelled to prepare and produce a privilege log of those documents for an *in camera* inspection by the district court to determine whether the

2

> asserted peer review privilege applies to shield the withheld document.
>
> By judgment signed on September 26, 2022, the district court granted [Dr. Brooks, Ms. Burchfield and SLMA's] Motions and issued an order protecting from discovery the documents sought by [Plaintiff] in her Notice of Deposition for Records Only and the STD issued to SLMA.

2022-0707, pp. 1-3, 353 So.3d at 383-384.

At issue in *Porche I* was the applicability of La. R.S. 13:3715.3, the peer review statute. The statute was "designed to protect the confidentiality of hospital peer review committee records." *See Gautreaux v. Frank*, 1995-1033, p. 1 (La. 6/16/95), 656 So.2d 634. Ms. Porche argued the district court erred in granting the Motions for Protective Order from Dr. Brooks, Nurse Practitioner Sydney Burchfield ("NP Burchfield") and SLMA without evidence that the requested documents passed before a peer review committee and without conducting an *in camera* inspection to determine if the documents were subject to the statute's peer review privilege. *Porche*, 2022-0707, p. 3, 353 So.3d at 384. Upon review, this Court granted Ms. Porche's writ application, vacated the judgment, and remanded to the district court to conduct an *in camera* inspection to ascertain the documents subject to the peer review privilege. *Porche*, 2022-0707, p. 5, 353 So.3d at 385.

After remand, Ms. Porche filed a motion to compel. The motion to compel requested that NP Burchfield, Dr. Brooks, and SLMA be compelled to produce a "privilege log" to describe the nature of the documents over which they asserted a privilege. On May 12, 2023, the district court denied the motion to compel. However, the district court, in accordance with *Porche I*, ordered Dr. Brooks, NP Burchfield, and SLMA to produce the withheld documents for an *in camera* inspection.

3

Thereafter, Dr. Brooks' counsel submitted the withheld documents to the district court. The submission included a cover letter to the court outlining the various privileges specifying the privileges asserted relative to the documents.

After the submissions, Ms. Porche filed another motion to compel the production of the *ex parte* "cover letter" (hereinafter, "privilege log letter" or "privilege log communication"). Specifically, Ms. Porche argued the privilege log letter, submitted solely to the district court, amounted to an *ex parte* communication. Ms. Porche emphasized that Dr. Brooks' attorney made substantive arguments to support his privilege claims with respect to each document produced for the *in camera* inspection. Moreover, Ms. Porche emphasized that the privilege log letter was not submitted pursuant to an order. Therefore, she claimed all counsel should have access as the intended purpose of the privilege log letter was to improperly influence the district court's decision-making during the *in camera* inspection process.

The district court conducted a hearing on Ms. Porche's motion to compel. It subsequently issued a "Judgment and Reasons" on October 11, 2024, outlining the documents to be produced and the documents designated as privileged pursuant to the court's *in camera* inspection. The parties expressed concern regarding the scope of the October 11, 2024 judgment; and on November 13, 2024, the district court issued a "clarifying judgment." The judgment provided, in part, that

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:
>
> Sydney Burchfield, NP is to produce to Claimant those documents turned over to the Court for *in camera* inspection that are bates stamped 9-22;

The remaining documents that were produced for *in camera* inspection by Sydney Burchfield, NP, are protected under the "peer review" statute, La. R.S. 13:3715.3, and are not discoverable;

All documents that were produced for *in camera* inspection by Eric Brooks, M.D. are protected under the "peer review" statute La. R.S. 13: 3715.3 and are not discoverable.

All documents that were produced for *in camera* inspection by South Louisiana Medical Associates are protected under the "peer review" statute, La. R.S. 13:3715.3 and are not discoverable.

Counsel for Sydney Burchfield, NP is to reproduce his letter to the Court only of May 24, 2023, in the form of a pleading as a "privilege log," which he can file under seal with the Court, but which the Court is ordering be produced to Claimant;

Counsel for Eric Brooks, M.D. is to reproduce her letter to the Court only of May 26, 2023, in the form of a pleading as a "privilege log," which she can file under seal with the Court, but which the Court is ordering be produced to Claimant;

Subsequent to the judgment, Dr. Brooks timely filed notice of intent to seek review of the district court's judgment.[1]

## ASSIGNMENTS OF ERROR

Dr. Brooks' collective assignments of error allege the district court erred in misinterpreting La. R.S. 13:3715.3, the peer review statute, and ordering the production of his attorney's privilege log letter.

## STANDARD OF REVIEW

A trial court's regulation of pre-trial discovery is afforded broad discretion and will not be reversed by an appellate court in the absence of a clear abuse of discretion. *Hendricks v. Wells Fargo Ins.*, 2021-0109, p. 4-5 (La. App. 4 Cir. 10/27/21) ("*Hendricks I*"), 366 So.3d 376, 379 (citing *Channelside Services., LLC v. Chrysochoos Group, Inc.*, 2015-0064, p. 8 (La. App. 4 Cir. 5/13/16), 194 So.3d

---

[1] Ms. Porche (2024-C-0792) and Dr. Brooks (2024-C-0795) also filed writ applications arising out of the same November 13, 2024 judgment.

5

751, 756) (citing *Sercovich v. Sercovich*, 2011-1780, p. 5 (La. App. 4 Cir. 6/13/12), 96 So.3d 600, 603)); *See also*, *Beasley v. Cannizzaro*, 2018-0520, p. 3 (La. App. 4 Cir. 11/21/18), 259 So.3d 633, 636, citing *Kimpton Hotel & Restaurant Group, Inc. v. Liberty Mut. Fire Ins. Co.*, 2007-1118, 2007-1209, 2007-1310, p. 7 (La. App. 4 Cir. 12/19/07), 974 So.2d 72, 77 ("reviewing the trial court's determination that materials are not privileged and protected by the work product doctrine under an abuse of discretion"). This standard of review "is highly deferential to the trial judge's determination under consideration," but "a court necessarily abuses its discretion if its ruling is based on an erroneous view of the law." *Boudreaux v. Bollinger Shipyard*, 2015-1345, p. 16 (La. App. 4 Cir. 6/22/16), 197 So.3d 761, 771 (citations omitted). As such, if "an appellate court finds [that] the trial court made a reversible error of law, it is required, whenever the state of the record on appeal so allows, to redetermine the facts *de novo* from the entire record and render a judgment on the merits." *Green v. Canal Ins. Co.*, 2022-0384, p. 4 (La. App. 4 Cir. 11/14/22), 352 So.3d 99, 102 (citing *Hendricks v. Wells Fargo Ins.*, 2021-0552, p. 4 La. App. 4 Cir. 3/9/22, 336 So.3d 643, 646 ("*Hendricks II*"), quoting *Laboriel-Pitio v. Latiker*, p. 15 (La. App. 4 Cir. 6/16/21), 323 So.3d 929, 938) (citations omitted).

Established jurisprudence provides that discovery statutes are to be liberally and broadly construed to achieve their intended objectives. *Stolzle v. Safety & Systems Assur. Consultants, Inc.*, 2002-1197, p. 2 (La. 5/24/02), 819 So.2d 287, 289, citing *Hodges v. Southern Farm Bureau Cas. Ins. Co.*, 433 So.2d 125 (La. 1983). During the discovery process, parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking

discovery or to the claim or defense of any other party…" La. C.C.P. art. 1422. "La. Code of Evidence art. 401 "defines 'Relevant evidence' as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Qurashi v. Rosenow*, 2022-0424, p. 8 (La. App. 4 Cir. 12/29/22), 367 So.3d 730, 735, quoting La. C.E. art. 401. "The discoverability test under La. C.C.P. art. 1422, entails first asking whether answering the discovery is feasible and practicable"; and "[i]f that answer is in the affirmative, then the court determines whether an answer to the discovery would 'expedite the litigation by either narrowing the area of controversy or avoiding unnecessary testimony or providing a lead to evidence.'" *Indus. Pipe, Inc. v. Plaquemines Par. Council*, 2012-1348, p. 8 (La. App. 4 Cir. 9/14/12), 100 So.3d 896, 901, citing *MTU of N. Am., Inc. v. Raven Marine, Inc.,* 475 So.2d 1063, 1067 (La.1985). Thus, "[t]he test of discoverability is not whether the particular information sought will be admissible at trial, but whether the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Cloud v. Gibson*, 2022-0316, p. 4 (La. App. 4 Cir. 7/6/22), 344 So.3d 253, 256, citing *Sercovich v. Sercovich*, 2011-1780, pp. 4-5 (La. App. 4 Cir. 6/13/12), 96 So.3d 600, 603 (citation omitted).

**DISCUSSION**

Dr. Brooks maintains the privilege log letter sent to the district court was in response to this Court's order in *Porche I* to produce for *in camera* inspection the documents SLMA initially claimed were protected by the peer review privilege as set forth in La. R.S. 13:3751.3.[2] Therefore, he argues the privilege log letter is not

---

[2] La. R.S. 13.3751.3 states, in relevant part, the following:

7

discoverable as it contains information the November 13, 2024 judgment found

was protected by the peer review statute.[3]  He contends that inasmuch as different

A. Notwithstanding the provisions of R.S. 44:7(D) or any other law to the contrary, all records, notes, data, studies, analyses, exhibits, and proceedings of:

(1) Any public hospital committee, medical organization peer review committee, any nationally recognized improvement agency or commission, including but not limited to the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), or any committee or agency thereof, or any healthcare licensure agency of the Louisiana Department of Health, public hospital board while conducting peer reviews, dental association peer review committee, professional nursing association peer review committee, extended care facility committee, nursing home association peer review committee, peer review committee of a group medical practice of twenty or more physicians, peer review committee of a freestanding surgical center licensed pursuant to R.S. 40:2131 et seq., or health maintenance organization peer review committee, including but not limited to the credentials committee, the medical staff executive committee, the risk management committee, or the quality assurance committee, **any committee determining a root cause analysis of a sentinel event**, established under the bylaws, rules, or regulations of such organization or institution, or

(2) Any hospital committee, the peer review committees of any medical organization, dental association, professional nursing association, nursing home association, social workers association, group medical practice of twenty or more physicians, nursing home, ambulatory surgical center licensed pursuant to R.S. 40:2131 et seq., ambulance service company, health maintenance organization, any nationally recognized improvement agency or commission, including but not limited to the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), or any committee or agency thereof, or any healthcare licensure agency of the Louisiana Department of Health, or healthcare provider as defined in R.S. 40:1299.41(A), or extended care facility committee, including but not limited to the credentials committee, the medical staff executive committee, the risk management committee, or the quality assurance committee, any committee determining a root cause analysis of a sentinel event, established by the peer review committees of a medical organization, dental organization, group medical practice of twenty or more physicians, social workers association, ambulatory surgical center licensed pursuant to R.S. 40:2131 et seq., ambulance service company, health maintenance organization, or healthcare provider as defined in R.S. 40:1299.41(A), or private hospital licensed under the provisions of R.S. 40:2100 et seq., **shall be confidential wherever located and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be available for discovery or court subpoena regardless of where located**, except in any proceedings affecting the hospital staff privileges of a physician, dentist, psychologist, or podiatrist, the records forming the basis of any decision adverse to the physician, dentist, psychologist, or podiatrist may be obtained by the physician, dentist, psychologist, or podiatrist only. However, no original record or document, which is otherwise discoverable, prepared by any person, other than a member of the peer review committee or the staff of the peer review committee, may be held confidential solely because it is the only copy and is in the possession of a peer review committee.  (Emphasis added).

privileges were asserted, the privilege log letter was needed to clarify the privilege claimed as to each particular document.

In opposition, Ms. Porche reiterates there was no order compelling the production of the privilege log letter; and moreover, the letter contained inappropriate substantive argument. Ms. Porche adds that the *ex parte* communication of the privilege log letters violates Louisiana Rules of Professional Conduct, Canon 3A(6) of the Louisiana Code of Judicial Conduct, and Louisiana jurisprudence.

We agree with Ms. Porche that the *ex parte* communication exemplified by Dr. Brooks' privilege log letter is impermissible as discussed hereinbelow:

> …The ex parte rules prohibit communication with a judge outside the presence of or without notice to all parties about the case's substance or merits, or about procedural matters that could create a strategic or tactical advantage.
>
> \*\*\*
>
> Rule 3.5 of the attorneys' Rules of Professional Conduct prohibits ex parte communications with a judge "during the proceeding unless authorized to do so by law" and prohibits any activity, that "seeks to influence a judge … by means prohibited by law." Canon 3A(6) of the Code of Judicial Conduct prohibits a judge from engaging in ex parte communications designed to influence his or her judicial action. The Canon allows ex parte communication as permitted by law "and where circumstances require for scheduling, administrative matters or emergencies." In applying the professional conduct rule against attorneys, the Louisiana Supreme Court has held that the Code of Judicial Conduct has the force of law and that any ex parte attempt to influence a judge by an attorney, unless specifically permitted by law, is an attempt to "influence a judge by means prohibited by law."… Communications need not address the ultimate merits of the case to violate the ex parte rule; the courts have found violations from "communications concerning drafting errors, admissibility of certain evidence and attorney's fees."
>
> \*\*\*

---

[3] NP Burchfield raises similar arguments contesting the production of her privilege log letter in her writ application, 2024-C-0791.

> The ex parte rules apply to both written and oral communication. An attorney may not send and "a judge shall not knowingly accept in any case briefs, documents or written communications … unless the contents are promptly made known to all parties."

***

§ 20.1. Ex parte communications, 21 La. Civ. L. Treatise, Louisiana Lawyering § 20.1 (citations omitted).

In this matter, we find the privilege log letter's submission exclusively to the district court amounted to an *ex parte* substantive pleading, albeit in the form of correspondence. The letter advanced legal argument to support the documents were not discoverable; and the necessary intent of such argument was to influence the district court's determination as to whether the documents submitted for *in camera* inspection were privileged. Thus, we conclude Dr. Brooks' privilege log letter to the district court constituted an improper *ex parte* communication.

Notwithstanding that the privilege log letter was an improper *ex parte* communication, Dr. Brooks also iterates the privilege log letter should not be produced because its production is contrary to the district court's finding that the documents produced on his behalf for *in camera* inspection were protected by the peer review statute. Moreover, he notes that neither the district court nor the *Porche I* decision had previously expressly ordered the production of a privilege log. These arguments, however, contravene Louisiana law, which requires production of a privilege log, pursuant to La. C.C.P. art. 1424(C), when a party withholds documents, claiming a privilege as to otherwise discoverable documents.

Louisiana Code of Civil Procedure art. 1424(C), effective August 1, 2023, requires that,

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, **the party shall make the claim expressly**

10

**and shall prepare and send to the other parties a privilege log** that describes the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. (Emphasis added).

Although the article does not specifically state that the party claiming a privilege must prepare and send the other parties a privilege log prior to its amendment, the article still requires that the party claiming a privilege "shall make the claim expressly" and "shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."[4] Indeed, the article's recent amendment was made in accordance with this Court's opinion in *Cloud v. Gibson*, 2022-0316 (La. App. 4 Cir. 7/6/22), 344 So.3d 253. In *Cloud*, this Court concluded that with reference to the production of privileged information, the party claiming a privilege had a mandatory duty to produce a privilege log.[5] The *Cloud* Court reasoned that the statute used the word shall and that Louisiana jurisprudence provides that use of the word 'shall' establishes a mandatory duty." *Cloud*, *supra*, citing La. R.S. 1:3[6]

---

[4] La. C.C.P. art. 1424(C), effective August 15, 2007 to July 31, 2023, provided:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

[5] The *Cloud* Court found the trial court erred in not granting the discovery requests of the Relators (in that case); ordering the production of any non-privileged relevant information prior to trial; and in not ordering the production of a privilege log. *Cloud*, 2022-0316, p. 6, 344 So.3d at 257-258.

[6] La. R.S. 1:3 states:

Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words

11

and *Hamilton v. Royal Int'l Petroleum Corp.*, 2005-0846, p. 11 (La. 2/22/06), 934 So.2d 25, 33.

In this matter, Dr. Brooks clearly asserts a privilege as to certain documents. Hence, in accordance with the precepts discussed in *Cloud*, he is required to produce a privilege log "that describes the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable [the Plaintiff] to assess the applicability of the privilege or protection." *See* La. C.C.P. art. 1424(C). Therefore, we conclude the district court did not err in ordering Dr. Brooks to reproduce his privilege log letter to the court and submit the letter to Ms. Porche "in the form of a pleading as a 'privilege log.'"

Nevertheless, we recognize that La. C.C.P. art. 1424(C) qualifies the duty to produce the privilege log "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Consequently, we amend the district court's judgment to require the production of the privilege log letter in conformity with the express provisions of La. C.C.P. art. 1424(C).

## CONCLUSION

For the foregoing reasons, we amend the judgment to add that the privilege letter be produced subject to the express provisions of La. C.C.P. art. 1424(C) and deny the writ application based on the amended judgment.

---

and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

The word "shall" is mandatory and the word "may" is permissive.

**JUDGMENT AMENDED;  WRIT DENIED AS AMENDED**